Good morning. May it please the court. What is this case about? It is about whether the IRS can take three, six, or even nine months of a person's life for government research without the person's consent. Each year, 14,000 Americans are pulled from a hat and subjected to a three-month-long, life-endangering IRS audit conducted for research purposes. We objected to the audit on statutory and constitutional grounds and asked to be exempted on medical grounds and provided medical documentation that the audit was life-threatening. But the IRS said that everyone, even those terminally ill with cancer, must participate. We also offered to do a non-research audit, but the IRS retaliated and turned our one-year audit into a three-year audit. The first, second, and fifth causes of action of the complaint are founded on both federal question jurisdiction and the second sentence of Section 702, the official capacity claims. In light of the Navajo Nation decision, which the court was presented with two days ago, the APA finality issue is eclipsed. Thus, the only remaining question for this Court is whether the Anti-Injunction Act applies, and if it applies, whether it is subject to the so-called Enix Exception or subject to the rules suggested by the Fifth Circuit decision in Lynn v. Shivatero. The Act does not apply. The determination of our claim will not result in a tax determination. Did you address, Counsel, Direct Marketing Association v. Brawl, Supreme Court case 2015 in Frederickson v. Starbucks? I'm sorry. Did you, Counsel, address Direct Marketing Association v. Brawl, Supreme Court case from 2015, and the Frederickson v. Starbucks case of this circuit, which is a 2016 case? And kind of could you address those and kind of differentiate those and where your case stands by comparison? That was not addressed in the briefing, Your Honor, and I basically, in this case, the issue is, as I said, first, if the Court possibly is referring to the question of whether, and this is also referred to as the Black line of decisions, does the Act also apply to activities that are intended to or may culminate in an audit? However, a nine-month audit is not such an activity. It's a horse of a different color than an audit. An IRS examiner who is trying to destroy you is not such an activity. A nine-month audit that endangers your life is not such an activity. Do you understand, Counsel, that rather than bringing this lawsuit, you could simply refuse to comply and force the IRS to issue a subpoena, which you can then move to quash, like you did in the related lawsuit? Well, this was, we were not presented with that type of decision. We basically had, presented with an audit. We did attempt to quash the subpoena on the Supreme Court of California, and we attempted to quash the subpoena on the, well, the subpoenas on the Supreme Court of California. And, however, the, what the IRS was doing in this case isn't dependent upon any of the, any of the summonses. But, but you, you could have, as I understand it, you could have refused to provide the information which would have required the IRS to bring a summons enforcement action in the district court, and there you would have been able to address these matters, wouldn't you? They wouldn't have to do that at all. What they did, actually, in this case, without doing that, was to make what they call a, a determination. And the court has seen it. It's a, it's a redacted document. The court has seen that determination. What basically it means, it would convert this, which would convert into a, convert into a deficiency judgment. So instead of having an audit from hell, you'd have a tax deficiency from hell, in which basically a million dollars of expenses were not taken into account. Does the IRS claim that you are deficient, or is this just a study for research purposes? We're deficient for study. So my, my question is, my understanding is that this audit is part of a research mechanism that the IRS isn't actually claiming at this point that the taxpayer has failed to pay its full taxes. Well, the question presented, the choice is, the choice is not that. The choice is participate in the audit or refuse to participate in the audit. If you refuse to participate in the audit, they basically assume that you have no expenses, that a law office in this case operates for three years, that a million dollars of expenses don't exist, and that becomes a deficiency judgment. And then you can apply for, you have a, you have a million dollar deficiency judgment on your head, and you have to, you have a deficiency judgment from hell in a tax court case. So that's the way the process works? That if you don't participate, they assume you owe millions of dollars of taxes? I mean, is that? That's one of the ways it can work. Yes, they could, I suppose, issue the kind of subpoenas you're suggesting. But nonetheless, the bottom line is that if you don't participate, you pay a steep, a huge price if you don't participate. But, I mean, the context of these, first the question is, first question is, does the issue, the Anti-Injunction Act, does it apply? And it does not apply because the determination of our claim, which was asked to be relieved, does not result in a tax determination. And in this case also, there's huge evidence of retaliation, and that does not result in a tax determination. And that essentially resolves the Act issue. But the ---- the Anti-Injunction Act would prohibit the suit because it's about collection of a tax or assessment of a tax, that nevertheless that there is a section of the Internal Revenue Code, Section 7604, which allows you to raise a defense to someone's enforcement action. And therefore, because that is the case, that that would preclude your suit. Well, there was no summons before enforcement action was brought. That's not the way the IRS proceeded. Well, you would precipitate the summons enforcement action by not providing the data they requested. But they did not proceed that way. They proceeded instead. That wasn't an option. The option in this case was don't participate and thank you very much. You owe the IRS a million dollars. These are the choices that are presented, real-life choices. But going back to the Act, even assuming that the Act somehow applies, Lynn v. Civitaro, that's a Fifth Circuit case which we cited in our brief, holds that when a party seeks equitable relief on constitutional grounds, federal courts must attempt to resolve the conflict by fashioning relief in such a way that it allows the IRS to collect taxes without violating the Constitution. So in this case, the conflict is resolved by allowing the IRS to do an audit. Thus, the Act clearly does not apply. And as far as the inest exception, even assuming that the Act applies, it's also subject to an inest exception. It's a two-pronged test. Basically, at a pleading stage, there must be pleading of irreparable injury. And that was fully pled. My health was endangered. My blood pressure was in the death zone. The examiner tried to destroy us financially. The IRS took nine months of our lives, and our constitutional rights were violated. What is the status of this audit? Is it over? It's – I wish it was over. No, it's pending. We're trying to – still trying to resolve it, but it's not over. And my concern at this – my greatest concern at this point is, in light of the retaliation, is that the retaliation will continue, that there will be an audit for – a research audit for 2014, 15, and 16, and it will continue forever because of the history of retaliation in this case. So that's a realistic – extremely realistic concern. All right. Thank you, counsel. You're a bit over the time, but I'll give you some time for rebuttal after, and we'll hear from the governor. Thank you. Thank you. You may proceed, counsel. Thank you, Your Honor. I'm Bethany Hauser for the United States. What is the government doing here? Why are they harassing these people who are elderly and sick? I'm having a hard time. Well, I'm sorry, but I'm not going to stop talking because I can't talk that way. So I'm sorry. I'm going to ask the governor the question, what are you doing here? The government is auditing the tax returns at the bank. But these people are clearly sick and elderly, and you are hurting their lives. Why are – why is the government – why have they chosen these people? Why are they doing this? Why are you even here? Why can't you settle this? Go to mediation, adopt this. Is there no heart here? They're reporting a significant amount of active income, and a significant number of deductions, which – I thought this was a pure research audit. Well, what the IRS is trying to research is the difference between the – Are you using this research audit as a cover for actually going after what you think might be fraud? Because that's not the right way to do it. No. There's never been a suggestion of fraud in this case. Then why are you talking about active income? I mean, why would you even raise that if this is a pure research audit? Are you suggesting that people over a certain age shouldn't be – No. No, and don't you turn that on me like that, young lady. I'm sorry. I'm sorry. I apologize, Your Honor. You should. In order to confirm that people's tax returns are accurate as filed, the IRS needs to ask questions to confirm the information on those returns. That is all the IRS is trying to do here. Counsel, how long have these audits been going on? The audits have been going on for some time. I can't give you the exact time. I can tell you that the IRS is required to assess any additional tax within three years of the initial return being filed, and that if an audit extends beyond that time, it's because the taxpayer has agreed to extend that period. Now, counsel had indicated that the choices in this case are either to participate in the audit or suffer the consequence of a possible deficiency judgment. As a practical matter, what's the consequence for refusing to participate in one of these research audits? Would it then result in the IRS filing a summons enforcement action under Section 7604, or would other actions be taken? It certainly could result in the IRS issuing a summons and then enforcing that summons under 7604. There are cases cited in our brief decided under the earlier taxpayer compliance measurement program that came into the courts in that manner, and those were challenges. So that could be one potential consequence. If somebody who is being asked to participate in the research audit simply refuses to participate, what other actions could the IRS take other than an enforcement action? The IRS could also, when the audit is concluded, which as Mr. Baxter just explained, this one is not, could determine a deficiency in tax. That would involve – it's not a deficiency judgment. It would involve sending a notice of deficiency to the taxpayer, and the taxpayer can then go to the tax court to dispute that notice of deficiency. I don't understand, like, what the basis for the notice of deficiency is. That would be an issue in the tax court. The tax court would refuse to uphold, and this court stands behind it, in refusing to uphold a naked deficiency assessment. So if the IRS were to make a deficiency determination that was unsupported by facts, then that would not stand up in the tax court. But here in this court you've argued that as an alternative way of allowing the IRS to proceed is that there is an option that the taxpayer can respond to some enforcement action. But it sounds like you're saying that the IRS has more options than that, that if the person refuses to comply, that the IRS can indeed go ahead and make an assessment based in part on the fact that the person hasn't responded. Not based on the fact that they haven't responded, based on other information available to the IRS. So in this case, in the case of this audit, other institutions were summoned. Their records were summoned. So if the IRS were able to determine from other sources that the taxpayer had underreported his taxes, then the IRS could make a deficiency determination on that basis. Of course, in order to issue those summonses, the IRS has to open itself up to the possibility of a suit to quash the summons. Would you agree that direct marketing would preclude our finding that the Anti-Injunction Act prohibits the lawsuit? I would not. Direct marketing was not briefed in this case. But if it had been, I would have cited the Tenth Circuit case from 2017, Green Solution Retail. Which addresses the issue whether direct marketing precludes the application of the Anti-Injunction Act to an IRS audit. But you do concede that the Baxter's constitutional claims are not barred by sovereign immunity, contrary to the district court, in light of Navajo Nation? They're not barred by the finality rule of Section 704 of 5 U.S.C.S., in light of Navajo Nation. What precludes the IRS from making this, transforming this from a research audit into a regular audit? In order for the research to provide the kind of database that, from which the IRS and Congress and the oversight committees can draw analytically sound conclusions, it has to be based on a random selection of taxpayers. So the IRS is loath to So the IRS randomly selected the Baxter's? Yes. Based on just lottery? That's the allegation in the complaint, which is what we're working from here, and that is how the research program operates. Yes. All right. And then somehow the Baxter's think that this was transformed into something else, into more of? Additional years were opened. Those are not part of the research audit program. Okay. So the additional years were opened because? Because the auditor thought, just as an auditor in any audit might conclude that there was reason to look into other tax years based on the information in front of her, the documents they had received from the banks or other sources, she concluded that additional years should be investigated here. So is this still probably considered a research audit, or is it something else at this point? Those are regular audits. There's no real legal distinction between a research audit and a regular audit. The question is just whether the data goes into the database for drawing analytic conclusions. And 2012 and 2013 were never research audits. Well, how does this end? When does it end? Is there an end point? If the taxpayer were to cease signing extensions to the time to make an assessment, the IRS would have to issue a notice of determination, and that would give them the opportunity to go to tax court and challenge the IRS's actions. I don't know if you have any other questions. No. Well, you say direct marketing doesn't control, and you cited a case, but isn't this more like information gathering rather than tax collection, at least at its inception? It may lead. It may lead to the IRS taking some action to collect taxes down the road. It might lead to a tax assessment, which is a term of art in tax law which always precedes collection. Right. It might lead to that. But the Supreme Court hasn't been so flexible in terms of finding that something that leads to tax collection or assessment can be viewed as that. And they laid out in direct marketing kind of four stages of activity in the tax collection area, I mean, the tax area. And why does this fit into assessment or collection rather than into information gathering, which may then lead to assessment or collection? All of this, the process of audit that leads to assessment is, the information gathering at issue in direct marketing was not an audit of a particular return. It was information required to be submitted by third parties pursuant to a state law. And it was not the Anti-Injunction Act that was at issue in direct marketing. It was a different federal statute that has a similar effect with respect to state laws. It's been distinguished in the Green Solution case by the Tenth Circuit from the Anti-Injunction Act at issue here. And a lot of the reasoning in direct marketing and in that division into the four stages is based on the state of the law in, I think it's 1937 when the statute there at issue was adopted. The statute here at issue was adopted in 1867. The reasoning about the state of the law in 1937 is not equally applicable to it. It's clear, I can't provide you with the information right here, but I think that it's clear that the 1867 statute indicates that inquiries into the amount of tax properly due are considered part of the process of assessment. Thank you. Thank you, counsel. You're over your time. Thank you. I heard, thank you, I heard something to suggest that the action taken in this case was not based on lack of response, but was instead based on information provided by third parties or banks, et cetera. I believe this goes outside the record, but in point of fact, it was based, there was a, for example, we provided four boxes, four banker's boxes of documentation of expenses to the IRS. Because this case involved retaliation, the examiner didn't look at those four boxes or entirely ignored them and went ahead and made his income determination, his expense determination, basically finding that my office had operated for three years without expenses. So there was a response, four boxes of responses, and yet the retaliatory action of this examiner totally ignored the documentation. With respect to direct marketing, apparently members of the panel are interested in that, since it wasn't addressed in a brief, we would respectfully request the opportunity to file a supplemental letter or supplemental brief directed to that issue. All right. Both sides may file a supplemental brief directed to the case direct marketing. Do you have the citation? Next, and I'll get to these points quickly. Not to exceed five pages and within 14 days. Thank you. Additional years were not part of the research audit. That's contrary to the pleading and also contrary to the facts. All three of these years were part of a research audit. All three. Can I please clarify that, because I understood opposing counsel to say that the first year was the research audit and the second two years were added based on what came from the research audit, that they're not part of the research audit? That's not correct. That is absolutely not correct. Additional years were simply added as part of retaliation, had nothing to do with the information obtained. It's also suggested that there's no difference between a regular audit and a research audit and that just the research audit goes to the databases. Again, that's absolutely false, and the information regarding that claim is provided in our reply brief. We asked to, obviously, we have no problem with the information from our audit being used in a database. Why would we care? Instead, our concern was the fact that the IRS took nine months of our lives. And it was also suggested that if the taxpayer were to cease on an extension, that the notice of assessment would only issue based on the taxpayer not giving the IRS an extension. And that's when this notice of assessment was made. In point of fact, that's not what happened. In fact, we gave the IRS, when it was ever required, ever asked for all the extensions they asked for, every single time. Well, she was saying, actually, that perhaps you shouldn't have given them an extension, ironically. Her point was, if you stopped giving them extensions, then they'd have to do something else. Well, if we didn't give them an extension, they would close the audit and basically will do what they did anyway and say, you know, thank you very much, you owe us a million dollars, because your office doesn't have any expenses, even though we give them four boxes of documentation of expenses. So it had nothing to do with the extensions or just had nothing to do with the case. I didn't find the argument to have anything to do with what was going on. But that's what I was suggesting, is that particular audit over so that the first audit, the one that was the research audit, has that been completed? No, they're all coupled. They're all part of the same audit. It's ongoing. Ongoing. We're attempting. This is outside the record again. It's separate and apart from what's going on here. We're still attempting to settle that. But as I said, our concern at this point is that this will go on indefinitely, because we're dealing with retaliation. Have you gone to the Ninth Circuit Mediation Unit to talk about settlement? Have you been working through our court? Yes. We requested it, but the IRS refused our request. And not Ms. Hauser. She has been always courteous. But the IRS itself refused our request. Twice we requested that. So do you still refuse to participate in the Ninth Circuit mediation? I'm asking whether you are willing to mediate this particular case. Yes. You are willing to mediate this particular case. You just said she was willing to mediate this case. Well, she just said that. As Ms. Hauser will tell you, we made certain settlement proposals. All right. We're willing to mediate it if that will certainly take advantage. You're well over time. I'm going to defer submission of this case pending the supplemental briefing. We're going to confer after we're finished with the hearings for today and quite possibly decide to send this to the mediation unit so that you can talk with our mediators. We will end our argument on this case and take up the companion case, Baxter v. United States. Thank you very much.
judges: Wardlaw, Nguyen, Oliver